## CONLEY ET AL. *v.* GIBSON ET AL.

No. 7.   Argued October 21, 1957.—Decided November 18, 1957.

*Joseph C. Waddy* argued the cause for petitioners. With him on the brief were *Roberson L. King, Robert L. Carter, William C. Gardner* and *William B. Bryant.*

*Edward J. Hickey, Jr.* argued the cause for respondents. With him on the brief was *Clarence M. Mulholland.*

MR. JUSTICE BLACK delivered the opinion of the Court.

Once again Negro employees are here under the Railway Labor Act[1] asking that their collective bargaining agent be compelled to represent them fairly. In a series of cases beginning with *Steele* v. *Louisville & Nashville R. Co.,* 323 U. S. 192, this Court has emphatically and repeatedly ruled that an exclusive bargaining agent under the Railway Labor Act is obligated to represent all employees in the bargaining unit fairly and without discrimination because of race and has held that the courts have power to protect employees against such invidious discrimination.[2]

This class suit was brought in a Federal District Court in Texas by certain Negro members of the Brotherhood of Railway and Steamship Clerks, petitioners here, on behalf of themselves and other Negro employees similarly situated against the Brotherhood, its Local Union No. 28 and certain officers of both. In summary, the complaint

---

[1] 44 Stat. 577, as amended, 45 U. S. C. § 151 *et seq.*

[2] *Tunstall* v. *Brotherhood of Locomotive Firemen & Enginemen,* 323 U. S. 210; *Graham* v. *Brotherhood of Locomotive Firemen & Enginemen,* 338 U. S. 232; *Brotherhood of Railroad Trainmen* v. *Howard,* 343 U. S. 768. Cf. *Wallace Corp.* v. *Labor Board,* 323 U. S. 248; *Syres* v. *Oil Workers International Union,* 350 U. S. 892.

made the following allegations relevant to our decision: Petitioners were employees of the Texas and New Orleans Railroad at its Houston Freight House. Local 28 of the Brotherhood was the designated bargaining agent under the Railway Labor Act for the bargaining unit to which petitioners belonged. A contract existed between the Union and the Railroad which gave the employees in the bargaining unit certain protection from discharge and loss of seniority. In May 1954, the Railroad purported to abolish 45 jobs held by petitioners or other Negroes all of whom were either discharged or demoted. In truth the 45 jobs were not abolished at all but instead filled by whites as the Negroes were ousted, except for a few instances where Negroes were rehired to fill their old jobs but with loss of seniority. Despite repeated pleas by petitioners, the Union, acting according to plan, did nothing to protect them against these discriminatory discharges and refused to give them protection comparable to that given white employees. The complaint then went on to allege that the Union had failed in general to represent Negro employees equally and in good faith. It charged that such discrimination constituted a violation of petitioners' right under the Railway Labor Act to fair representation from their bargaining agent. And it concluded by asking for relief in the nature of declaratory judgment, injunction and damages.

The respondents appeared and moved to dismiss the complaint on several grounds: (1) the National Railroad Adjustment Board had exclusive jurisdiction over the controversy; (2) the Texas and New Orleans Railroad, which had not been joined, was an indispensable party defendant; and (3) the complaint failed to state a claim upon which relief could be given. The District Court granted the motion to dismiss holding that Congress had given the Adjustment Board exclusive jurisdiction over

the controversy. The Court of Appeals for the Fifth Circuit, apparently relying on the same ground, affirmed. 229 F. 2d 436. Since the case raised an important question concerning the protection of employee rights under the Railway Labor Act we granted certiorari. 352 U. S. 818.

We hold that it was error for the courts below to dismiss the complaint for lack of jurisdiction. They took the position that § 3 First (i) of the Railway Labor Act conferred exclusive jurisdiction on the Adjustment Board because the case, in their view, involved the interpretation and application of the collective bargaining agreement. But § 3 First (i) by its own terms applies only to "disputes between an employee or group of employees and a carrier or carriers." [3] This case involves no dispute between employee and employer but to the contrary is a suit by employees against the bargaining agent to enforce their statutory right not to be unfairly discriminated against by it in bargaining.[4] The Adjustment Board has no

[3] In full, § 3 First (i) reads:

"The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, including cases pending and unadjusted on the date of approval of this Act [June 21, 1934], shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes." 48 Stat. 1191, 45 U. S. C. § 153 First (i).

[4] For this reason the decision in *Slocum* v. *Delaware, L. & W. R. Co.*, 339 U. S. 239, is not applicable here. The courts below also relied on *Hayes* v. *Union Pacific R. Co.*, 184 F. 2d 337, cert. denied, 340 U. S. 942, but for the reasons set forth in the text we believe that case was decided incorrectly.

power under § 3 First (i) or any other provision of the Act to protect them from such discrimination. Furthermore, the contract between the Brotherhood and the Railroad will be, at most, only incidentally involved in resolving this controversy between petitioners and their bargaining agent.

Although the District Court did not pass on the other reasons advanced for dismissal of the complaint we think it timely and proper for us to consider them here. They have been briefed and argued by both parties and the respondents urge that the decision below be upheld, if necessary, on these other grounds.

As in the courts below, respondents contend that the Texas and New Orleans Railroad Company is an indispensable party which the petitioners have failed to join as a defendant. On the basis of the allegations made in the complaint and the relief demanded by petitioners we believe that contention is unjustifiable. We cannot see how the Railroad's rights or interests will be affected by this action to enforce the duty of the bargaining representative to represent petitioners fairly. This is not a suit, directly or indirectly, against the Railroad. No relief is asked from it and there is no prospect that any will or can be granted which will bind it. If an issue does develop which necessitates joining the Railroad either it or the respondents will then have an adequate opportunity to request joinder.

Turning to respondents' final ground, we hold that under the general principles laid down in the *Steele, Graham,* and *Howard* cases the complaint adequately set forth a claim upon which relief could be granted. In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts

in support of his claim which would entitle him to relief.[5]
Here, the complaint alleged, in part, that petitioners
were discharged wrongfully by the Railroad and that
the Union, acting according to plan, refused to pro-
tect their jobs as it did those of white employees or to
help them with their grievances all because they were
Negroes. If these allegations are proven there has been
a manifest breach of the Union's statutory duty to repre-
sent fairly and without hostile discrimination all of the
employees in the bargaining unit. This Court squarely
held in *Steele* and subsequent cases that discrimination
in representation because of race is prohibited by the Rail-
way Labor Act. The bargaining representative's duty not
to draw "irrelevant and invidious" [6] distinctions among
those it represents does not come to an abrupt end, as
the respondents seem to contend, with the making of
an agreement between union and employer. Collective
bargaining is a continuing process. Among other things,
it involves day-to-day adjustments in the contract and
other working rules, resolution of new problems not cov-
ered by existing agreements, and the protection of em-
ployee rights already secured by contract. The bargain-
ing representative can no more unfairly discriminate in
carrying out these functions than it can in negotiating a
collective agreement.[7] A contract may be fair and im-
partial on its face yet administered in such a way, with
the active or tacit consent of the union, as to be flagrantly
discriminatory against some members of the bargaining
unit.

---

[5] See, *e. g., Leimer* v. *State Mutual Life Assur. Co.,* 108 F. 2d
302; *Dioguardi* v. *Durning,* 139 F. 2d 774; *Continental Collieries* v.
*Shober,* 130 F. 2d 631.

[6] *Steele* v. *Louisville & Nashville R. Co.,* 323 U. S. 192, 203.

[7] See *Dillard* v. *Chesapeake & Ohio R. Co.,* 199 F. 2d 948; *Hughes
Tool Co.* v. *Labor Board,* 147 F. 2d 69, 74.

The respondents point to the fact that under the Railway Labor Act aggrieved employees can file their own grievances with the Adjustment Board or sue the employer for breach of contract. Granting this, it still furnishes no sanction for the Union's alleged discrimination in refusing to represent petitioners. The Railway Labor Act, in an attempt to aid collective action by employees, conferred great power and protection on the bargaining agent chosen by a majority of them. As individuals or small groups the employees cannot begin to possess the bargaining power of their representative in negotiating with the employer or in presenting their grievances to him. Nor may a minority choose another agent to bargain in their behalf. We need not pass on the Union's claim that it was not obliged to handle any grievances at all because we are clear that once it undertook to bargain or present grievances for some of the employees it represented it could not refuse to take similar action in good faith for other employees just because they were Negroes.

The respondents also argue that the complaint failed to set forth specific facts to support its general allegations of discrimination and that its dismissal is therefore proper. The decisive answer to this is that the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is "a short and plain statement of the claim" [8] that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. The illustrative forms appended to the Rules plainly demonstrate this. Such simplified "notice pleading" is made possible by the liberal opportunity for discovery and the other pretrial procedures

---

[8] Rule 8 (a) (2).

established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues.[9] Following the simple guide of Rule 8 (f) that "all pleadings shall be so construed as to do substantial justice," we have no doubt that petitioners' complaint adequately set forth a claim and gave the respondents fair notice of its basis. The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits. Cf. *Maty* v. *Grasselli Chemical Co.,* 303 U. S. 197.

The judgment is reversed and the cause is remanded to the District Court for further proceedings not inconsistent with this opinion.

*It is so ordered.*

---

[9] See, *e. g.,* Rule 12 (e) (motion for a more definite statement); Rule 12 (f) (motion to strike portions of the pleading); Rule 12 (c) (motion for judgment on the pleadings); Rule 16 (pre-trial procedure and formulation of issues); Rules 26–37 (depositions and discovery); Rule 56 (motion for summary judgment); Rule 15 (right to amend).